# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| TAMMY CROWLEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| | ) |
| HARTFORD LIFE AND | ) |
| ACCIDENT INSURANCE COMPANY, | ) |
| | ) |
| Defendant. | ) |

## **COMPLAINT**

COMES NOW Plaintiff, Tammy Crowley, and for her claims and causes of action against Defendant, Hartford Life and Accident Insurance Company, states as follows:

## PARTIES

1. Tammy Crowley ("Crowley") is a resident and citizen of the State of Missouri.

2. Defendant The Hartford Life and Accident Insurance Company ("Hartford") is an out-of-state insurance company authorized to do business in the State of Missouri. The Commissioner of the Missouri Department of Insurance is authorized to accept service of process on behalf of Hartford.

## JURISDICTION AND VENUE

3. Crowley brings her claim pursuant to the Employee Retirement Income Security Act ("ERISA") and 29 U.S.C. § 1001 *et seq.*

4. This dispute is governed by a welfare benefits plan and its policy documents, as well as applicable federal law regarding employer provided benefits. 29 U.S.C. § 1132(e)(1).

5. This Court also has subject matter jurisdiction pursuant to the general jurisdictional statute for civil actions arising under federal law. 28 U.S.C. § 1331.

6. Venue lies in the Western District of Missouri under 29 U.S.C. § 1332(e)(2), as the breach occurred in this district, and because the welfare benefits plan is administered in this district.

7. Venue is also proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and/or omissions giving rise to this action occurred within this judicial district.

## INFORMATION REGARDING TRIAL

8. No jury trial is allowed under ERISA law.

## STATEMENTS OF FACT

9. Crowley worked as a Book Assembler for RR Donnelly & Sons ("Donnelly"). The duties of her occupation included:

   a. Examine stitched, collated, bound, or unbound product samples for defects, such as imperfect bindings, ink spots, torn pages, loose pages, or loose or uncut threads;

   b. Read work orders to determine instructions and specifications for machine set-up.

   c. Install or adjust bindery machine devices, such as knives, guides rollers, rounding forms, creasing rams, or clamps, to accommodate sheets, signatures, or books of specified sizes;

   d. Trim edges of books to size, using cutting machines, book trimming machines, or hand cutters;

   e. Stitch or glue endpapers, bindings, backings, or signatures, using sewing machines, glue machines, or glue and brushes.

10. The Specific Vocational Preparation of this occupation is between 4.0 < 6.0 with an estimated period of learning of 3 months to 1 year.

11. Crowley was unable to continue employment due to a combination of impairments, including degenerative joint disease, chronic neck and back pain, chronic paresthesia of right upper extremity, congenital hearing loss, obesity, hypertension, depression, and anxiety.

12. Crowley's last day of work was December 6, 2012.

13. Crowley initiated an LTD benefits claim after this date.

14. Crowley was approved for LTD benefits with a start date of June 7, 2013. Crowley's LTD benefit was approved through November 2, 2021.

15. On April 26, 2022, Hartford communicated its denial and that they determined that Crowley was capable of sedentary work and that she was no longer disabled under the policy.

16. At the time of her disability, Crowley had LTD coverage through her employer. Hartford underwrote the LTD plan and was the claims administrator.

17. Crowley's physical issues arise from a cerebrovascular accident, which resulted in weakness and numbness in her right arm. Crowley also has chronic neck and back pain due to degenerative joint disease. Crowley had a lumbar laminectomy in 2015.

18. On March 1, 2022, Dr. Erin L. Schrier, D.O. supplied a letter to Hartford that opined that Crowley has marked hearing loss that impacts her ability to be able to work around loud noises or in an area where communication is important to her job. Dr. Schrier opined that Crowley was not capable of working 40 hours a week even at a sedentary job. Dr. Schrier stated Crowley would require frequent position changes and frequent breaks due to the

3

Case 4:22-cv-00652-BCW   Document 1   Filed 10/12/22   Page 3 of 9

chronic nature of Crowley's neck and back pain. Dr. Schrier also noted Crowley's ability to stand, and walk would be limited due to her right leg weakness.

19. Donnelly sponsored a group long-term disability ("LTD") benefits plan ("Plan") for its participating employees.

20. The Plan constitutes employee welfare benefit plans as defined by 29 U.S.C. § 1002 (1).

21. The Plan offered disability benefits to qualifying Donnelly's employee Plan participants.

22. At all relevant times, Crowley has been a participant and covered person under the terms of the Plan.

23. Hartford is the administrator of the Plan.

24. Donnelly delegated or attempted to delegate the function of issuing LTD claim determinations to Hartford.

25. Donnelly and Hartford entered into an administrative services contract through which Donnelly paid Hartford for acting as claims administrator.

26. On September 2, 2022, Crowley requested her entire claim file from Hartford. As of the date of this filing, no claim file has been received.

27. The Plan and Policy articulate the conditions under which a Plan Participant is entitled to LTD benefits.

28. It states:

> **Test of Disability** (GR-9N 06-010 02-NJ)
> From the date that you first became disabled and until monthly benefits are payable for 24 months you meet the test of disability on any day that:
>
> - You cannot perform the **material duties** of your **own occupation** solely because of an **illness, injury** or disabling pregnancy-related condition; and
> - Your work earnings are 80% or less of your **adjusted predisability earnings**.
>
> **After the first 24 months of your disability** that monthly benefits are payable, you meet the plan's test of disability on any day you are unable to work at any **reasonable occupation** solely because of an **illness, injury** or disabling pregnancy-related condition.

29. "Material Duties" is defined as:

Duties that:

- Are normally needed for the performance of your **own occupation**; and
- Cannot be reasonably left out or changed. However, to be at work more than 40 hours per week is not a material duty.

30. The Plan defines "Reasonable Occupation" as:

    This is any gainful activity:
    - For which you are, or may reasonably become, fitted by education, training, or experience; and
    - Which results in, or can be expected to result in, an income of more than 60% of your **adjusted predisability earnings**.

31. Crowley, at all relevant times, met the terms of "disabled" under the any occupation standard of the policy.

32. Crowley was unable to perform the material duties of any occupation because of disability.

33. Crowley's work earnings were 80% or less of her adjusted pre-disability earnings.

34. Crowley is unable to perform the material duties of any occupation. She meets this standard and is eligible for benefits as she falls within the Plan's definition of "disabled".

35. Crowley is also unable to work any reasonable occupation due to her combination of impairments.

36. Hartford purportedly performed a transferable skills analysis and determined that Crowley was able to work largely fictitious occupations it created in an imaginary economy.

37. This is in error, for the following reasons:

    a. Crowley has no transferable skills that remain intact;

    b. Crowley does not have the ability to be retrained into any occupation;

    c. Crowley possesses no computer skills to speak of; and

    d. Crowley lacks the ability to perform basic range of motion movements that are required for even sedentary jobs.

38. Crowley, in combination with her limited physical restrictions to the lumbar spine, degenerative joint disease, and her hearing impairment, is unable to work any reasonable occupation for any day.

39. Crowley, has at all relevant times, met the policies definition of "disability" under the Plan and is entitled to benefits.

40. Crowley has exhausted her administrative remedies.

## CAUSES OF ACTION

### COUNT I
### 29 U.S.C. § 1132(a)(1)(B) – WRONGFUL DENIAL OF BENEFITS

41. Crowley realleges the preceding paragraphs as if fully set forth herein.

42. Crowley is entitled to all unpaid and accrued LTD benefits, as Hartford:

    a. Made an unfavorable decision without substantial evidence;

    b. Failed to properly consider Crowley's medical impairments and resulting limitations; and

    c. Issued an unfavorable decision that was arbitrary and capricious.

43. Pursuant to 29 U.S.C. § 1132(a)(1)(b), Crowley is entitled to an award of actual damages for losses suffered.

44. Pursuant to 29 U.S.C. § 1132(g), judgment may include compensation for a beneficiary's attorney's fees, costs, and prejudgment interest.

45. Hartford has not satisfied its obligation to pay Crowley's LTD benefits.

46. WHEREFORE, pursuant to 29 U.S.C. § 1132(a)(1)(B) and 29 U.S.C. § 1132(g), Crowley prays for judgment against Hartford for unpaid LTD benefits, attorney's fees, costs, and prejudgment interest.

## COUNT II
## 29 U.S.C. § 1132(a)(3) – BREACH OF FIDUCIARY DUTY

47. Crowley realleges the preceding paragraphs as if fully set forth herein.

48. Under 29 U.S.C. § 1002(21)(A), a fiduciary is one who:

    "exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property or such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan."

49. 29 U.S.C. § 1104(a)(1)(A) describes the fiduciary standard of care:

    "a fiduciary shall discharge her duties with respect to a plan solely in the interest of the participants and beneficiaries and – for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan."

50. Hartford, the Plan's designated claims administrator, is a fiduciary.

51. Crowley participated in and benefitted from the Plan as previously indicated.

52. Hartford's claims management practices are motivated by financial incentives in its administrative services agreement with Donnelly.

53. As the payor of benefits and the entity responsible for exercising discretion in claims administration, Hartford operates under an inherent conflict of interest.

54. A higher than marketplace quality standard, as set forth in *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 128 (2008) governs the actions of a fiduciary.

55. Hartford breached its fiduciary duty in:

    a. Failing to comply with its internal guidelines and claims handling procedures. Its claim handlers did not comply with documented instructions involving the administration of disability claims, including its procedures involving coverage

and eligibility determinations;

    b. Engaging in a structural conflict of interest by assuming the role of both claims' administrator and payor of benefits;

    c. Engaging in a structural conflict of interest by referring Crowley' claim for peer review to a person with a conflict of interest and who is incapable of providing independent, unbiased opinions;

    d. Failing to properly consider competent medical and vocational opinion evidence, and/or failing to specifically explain why it did not agree with such evidence; and

    e. Failing to produce to Crowley a full and complete copy of her claim file and/or any other documents relevant to the denial of her claim;

    f. Sending Crowley to Concentra for an Independent Medical Review ("IME") that was brief, cursory, and used as a unilateral mechanism for denial.

56. Hartford denied Crowley's LTD benefits for the purpose of elevating its financial interests. In doing so, it breached its fiduciary duties.

57. Hartford failed to discharge its duties solely in the interests of its participants and beneficiaries. It acted with both a conflict of interest and breached its fiduciary duty to both Crowley and the Plan's participants and beneficiaries generally.

58. Hartford's improper conduct demonstrates that ordinary relief under § 1132(a)(1)(B) is not an adequate remedy.

59. Hartford's violations of regulations alone allow Crowley the right to pursue any remedy under Section 502(a) of ERISA, including § 1132(a)(3). 29 C.F.R. § 2560.503-1(1)(2)(i).

60. Hartford's violations of federal regulation also subject its decision to *de novo* review.

61. WHEREFORE, pursuant to 29 U.S.C. § 1132(a)(3), § 1109, and § 1132(a)(2), Crowley

prays for an order that Hartford retrain its employees consistent with ERISA fiduciary obligations and federal regulations; for reformation of its services agreement with the plan administrator consistent with ERISA fiduciary obligations and federal regulations; for an injunction preventing further unlawful acts by Hartford in its fiduciary capacity; for an equitable accounting of benefits that Hartford has withheld; for the disgorgement of profits enjoyed by Hartford in withholding benefits; for restitution under a theory of surcharge; for the Court's imposition of a constructive trust; for an award of attorney fees; and for further relief as the Court deems just.

Respectfully submitted,

BURNETTDRISKILL, Attorneys

By: /s/ Derrick A. Pearce
Derrick A. Pearce, Mo. #42793
Kyle H. Sciolaro, Mo. #64568
Paul J. Taylor, Mo. #72159
103 W 26th Ave., Ste. 290
North Kansas City, MO 64116
P: 816.781.4836
F: 816.792.3634
dpearce@burnettdriskill.com
ksciolaro@burnettdriskill.com
ptaylor@burnettdriskill.com
ATTORNEYS FOR PLAINTIFF